## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| STANT USA CORP., STANT FOREIGN HOLDING CORP.; and VAPOR US HOLDING CORP., | Case No.:  1:21-cv-00253 |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| vs. | |
| FACTORY MUTUAL INSURANCE COMPANY, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs Stant USA Corp.; Stant Foreign Holding Corp.; and Vapor US Holding Corp.; (collectively, "Stant") file this Complaint for Declaratory Judgment against Defendant Factory Mutual Insurance Company ("FM"), alleging as follows:

### I.   NATURE OF ACTION

1.      This is an action for declaratory judgment arising out of an actual controversy between the parties concerning their rights and obligations under a contract of insurance.

2.      Specifically, this action concerns the refusal of FM, a multi-billion-dollar business, to live up to the promises it made in the "all risk" property insurance policy FM sold to Stant's ultimate parent company, Vapor Parent, LLC, and insuring Stant.

3.      In exchange for premiums paid, FM promised to pay for Stant's business interruption losses resulting from physical loss or damage to property at, *inter alia*, the locations of Stant's customers.  FM also promised to pay for Stant's business interruption losses if orders of civil authority limited access to the locations of Stant's customers.

4.      Despite these promises, FM has made clear through its most recent coverage position letter to Stant and its universal and public rejection of its coverage obligations for COVID-19 business interruption losses under business interruption, contingent time element, and Civil or Military Authority provisions, that it will not honor its contractual obligations and provide full coverage for Stant's business interruption losses resulting from SARS-CoV-2-related suspensions of or reductions in operations at Stant's customer locations.

5.      FM has left Stant with no choice but to seek judicial intervention to enforce the obligations owed to it by FM pursuant to the terms and conditions of the "all risk" policy FM sold (the "All Risk Policy"). The All Risk Policy is attached hereto as **Exhibit A**, and is incorporated herein by reference.

6.      Stant seeks a declaration that the known presence or statistically-certain presence of SARS-CoV-2 virions at Stant's customer locations or the ubiquitous and inevitable presence of SARS-CoV-2 virions throughout the locales, states, and countries where Stant's customers are located caused a "risk of physical loss or damage" or "physical loss or damage" to property at "contingent time element locations" within the meaning of those phrases as used in the All Risk Policy sufficient to trigger coverage for Stant's resulting business interruption losses under the All Risk Policy, including under the Supply Chain Time Element Coverage for Contingent Time Element Extended, and including coverage for Extended Period of Liability.

7.      Stant also seeks a declaration that various orders issued by governmental officials limiting or restricting Stant's customers from accessing and using their properties to conduct their ordinary business activities caused a "risk of physical loss or damage" or "physical loss or damage" to property at "contingent time element locations" within the meaning of those phrases as used in the All Risk Policy sufficient to trigger coverage for Stant's resulting business

interruption losses under the All Risk Policy, including under the Supply Chain Time Element Coverage for Contingent Time Element Extended, and including coverage for Extended Period of Liability.

8. Stant also seeks a declaration that the aforementioned government orders were issued as a direct result of "physical damage" at or within five statute miles/eight kilometres of Stant's customer locations, namely the ubiquitous and inevitable presence of SARS-CoV-2 virions throughout the relevant locales, states, and countries, and that the orders limited or restricted Stant's customers from accessing their properties, all within the meaning of those phrases as used in the All Risk Policy and all sufficient to trigger coverage for Stant's resulting business interruption losses under the All Risk Policy, including under the Supply Chain Time Element Coverage for Contingent Time Element Extended, and including coverage for Civil or Military Authority and Extended Period of Liability.

## II. **PARTIES**

9. Plaintiff Stant USA Corp. is a Delaware corporation with its principal place of business in Connersville, Indiana.

10. Plaintiff Stant Foreign Holding Corp. is a Delaware corporation with its principal place of business in Connersville, Indiana.

11. Plaintiff Vapor US Holding Corp. is a Delaware corporation with its principal place of business in Connersville, Indiana.

12. Defendant Factory Mutual Insurance Company is a Rhode Island corporation with its principal place of business in Johnston, Rhode Island and doing business in the State of Indiana.

13.     FM is, and at all relevant times herein, has been engaged in the business of selling property insurance policies, other insurance policies, and other products and services to, among others, companies like Vapor Parent, LLC and insuring companies like Stant, located both in and outside of Indiana.

### III.  JURISDICTION AND VENUE

14.     The subject matter jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this District, one of the insured properties at issue is located in this District, FM is deemed for venue purposes to reside in this District as it is subject to personal jurisdiction in this District, and the principal places of business of Stant USA Corp., Stant Foreign Holding Corp., and Vapor US Holding Corp. are in this District.

### IV.  STANT'S BUSINESS, OPERATIONS, AND CUSTOMERS

16.     Stant is a recognized world leader in the design and manufacturing of vapor management systems, fuel delivery systems, thermal management systems, and engineering services.

17.     Stant manufactures, among other things, closure caps, on-board vapor recovery components, and engine and transmission cooling components for the automotive industry.

18.     Stant's manufacturing operations are located in Connersville, Indiana, USA; Pine Bluff, Arkansas, USA; San Miguel de Allende, Guanajuato, Mexico; Ostrava, Moravskoslezský kraj, Czech Republic; and Suzhou, Jiangsu, China.

19.    Stant sells its products to the world's leading automobile manufacturers, including Fiat Chrysler, Ford Motor Company, and General Motors, as well as leading automotive suppliers, including Plastic Omnium.

20.    Stant's customers maintain locations throughout the globe, including but not limited to the United States (including in the states of Michigan, Illinois, Ohio, Kansas, South Carolina, and New Mexico), as well as in Canada, Mexico, China, and Italy.

## V.    THE GLOBAL SPREAD OF SARS-CoV-2

21.    In December 2019, during the term of the All Risk Policy, an outbreak of illness known as COVID-19 caused by a novel coronavirus formally known as SARS-CoV-2 was first identified in Wuhan, Hubei Province, China.  In an unprecedented event that has not occurred in more than a century, a pandemic of global proportions ensued, with the virus quickly spreading in China then to other Asian countries, the United States, Europe, and Mexico.

22.    On January 30, 2020, with the outbreak spreading outside of China, the WHO declared the COVID-19 outbreak a Public Health Emergency of International Concern.

23.    On March 11, 2020, the WHO officially declared the COVID-19 outbreak a worldwide pandemic.

24.    The rapid spread of COVID-19 is due in part to the highly transmissible character of SARS-CoV-2.  For example, as of March 1, 2020 there were approximately 87,784 confirmed COVID-19 cases across the globe.  Even despite initial shortages in available testing and laboratory capacity to process administered tests in at least some countries, that number increased to approximately 953,021 confirmed cases by April 1 and 3,189,808 cases by May 1. *See, e.g.*, https://graphics.reuters.com/CHINA-HEALTH-MAP/0100B59S39E/index.html.  As of January 10, 2021, in the United States alone, there have been more than 22 million cases and

more than 374,000 deaths.  *See* https://www.cnn.com/interactive/2020/health/coronavirus-us-maps-and-cases/ (last visited 01/10/2021).

25.     According to the World Health Organization (the "WHO"), "anyone can get sick with COVID-19."  https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-coronaviruses.

26.     According to the Center for Disease Control ("CDC"), a person may become infected by: (1) coming into close contact (about 6 feet) with a person who has COVID-19; (2) being exposed to respiratory droplets after an infected person talks, sneezes, coughs, sings, or breathes; and/or (3) touching surfaces or objects that have SARS-CoV-2 on them, and then touching his or her mouth, eyes, or nose.  *See* https://www.cdc.gov/coronavirus/2019-ncov/faq.html.

27.     Persons with COVID-19 can expel tens of thousands or even hundreds of thousands or more of SARS-CoV-2 virions each hour.  *See* http://www.clinlabnavigator.com/sars-cov-2-infectious-dose.html.  In addition, evidence in the context of influenza viruses supports that persons infected with COVID-19 may expel up to 20,000 virions in a single sneeze.  *See, e.g.*, https://www.reuters.com/article/us-flu-cough/whats-in-a-cough-20000-viruses-idUSTRE54B16F20090512.

28.     Asymptomatic individuals may also transmit SARS-CoV-2.  Based on a recent publication, it is estimated that at least 50% of new infections likely originated from people without any symptoms.  *See* https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2774707?utm_source=For_The_Media&utm_medium=referral&utm_campaign=ftm_links&utm_term=010721.  Thus, even individuals who appear healthy and present no identifiable symptoms of the disease have and

continue to spread the virus by breathing, speaking, or touching objects and surfaces.  These activities deposit tens or hundreds of thousands of SARS-CoV-2 virions in the air and on surfaces rendering the air and surfaces changed from their previous condition.

29.     According to a report in *The New York Times*, "[a]n infected person talking for five minutes in a poorly ventilated space can produce as many viral droplets as one infectious cough."  https://www.nytimes.com/interactive/2020/04/14/science/coronavirus-transmission-cough-6-feet-ar-ul.html.  In addition, one human sneeze can expel droplets that can travel up to 27 feet at nearly a hundred miles an hour. https://www.nationalgeographic.com/science/2020/04/coronavirus-covid-sneeze-fluid-dynamics-in-photos/.

30.     Although these virions containing droplets are very small, they are still physical, tangible objects that can travel and attach to other surfaces and cause harm, loss, and damage, and physically alter property and/or the integrity of property.  Virions, themselves, are microscopic and made up of genetic material surrounded by a protein shell, *see* https://rockedu.rockefeller.edu/component/what-are-viruses-made-of/, but they are capable of being observed and can attach themselves to other things they encounter.  When droplets and virions contact objects, they alter those objects, although not in a way perceptible by the naked human eye.  Virions also alter the air inside properties by making it dangerous and potentially lethal to breathe.

31.     Evidence suggests that SARS-CoV-2 virions may remain viable for hours to days on surfaces made from a variety of materials.  Studies support that SARS-CoV-2 virions can survive and remain virulent on stainless steel and plastic for up to 6 days, on glass for 3 days, and on wood and cloth for 24 hours.  *See*

https://www.thelancet.com/journals/lanmic/article/PIIS2666-5247(20)30003-3/fulltext. Testing of similar viruses suggests SARS-CoV-2 virions can survive on ceramics for at least 5 days and on silicon rubber for 3 days.  https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4659470/.  Studies from the National Institutes of Health support that SARS-CoV-2 virions may be detected in aerosols, including the droplets from breathing, for up to three hours, on plastic and stainless steel for up to three days, on cardboard for up to twenty-four hours, and on copper for up to four hours. *See* https://www.nih.gov/news-events/nih-research-matters/study-suggests-new-coronavirus-may-remain-surfaces-days; https://www.cdc.gov/coronavirus/2019-ncov/more/scientific-brief-sars-cov-2.html.  In addition, the CDC confirmed that SARS-CoV-2 RNA was identified on surfaces of the *Diamond Princess* cruise ship a full 17 days after the cabins were vacated.  https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e3.htm.

32.     The aforementioned types of materials are incorporated into property at the locations of Stant's customers.

33.     Because automobile manufacturing and supply plants are enclosed spaces where large numbers of people work in close proximity, Stant's customer locations are particularly susceptible to circumstances favorable to the spread of COVID-19/SARS-CoV-2.

## VI.  THE PRESENCE OF SARS-CoV-2 AT CUSTOMER LOCATIONS

34.     Many of Stant's customers suffered physical loss or damage due to the known presence or statistically-certain presence of SARS-CoV-2 virions at one or more of their facilities.

35.     By way of example, there have been confirmed cases of COVID-19 in at least some of Stant's customer's North American locations.

36.     For instance, in March 2020, workers tested positive for COVID-19 at Fiat

Chrysler's Sterling Heights, Michigan facility, at a GM facility in Warren, Michigan, as well as

at Ford's Wayne, Michigan and Dearborn, Michigan facilities.  *See*

https://www.cbsnews.com/news/automakers-shut-down-plants-coronavirus/;

https://www.clickondetroit.com/news/local/2020/03/17/employee-at-gm-cole-engineering-

center-in-warren-tests-positive-for-coronavirus-covid-19/;

https://www.nytimes.com/2020/03/18/business/economy/gm-ford-fiatchrysler-factories-

virus.html.

37.     Following the discovery of these confirmed COVID-19 cases (and likely others

not reported in the media), Fiat Chrysler, General Motors, and Ford temporarily closed all of

their North American facilities, including those in Canada and Mexico.  *See*

https://www.cbsnews.com/news/automakers-shut-down-plants-coronavirus/.

38.     Further, on or around April 2, 2020, an employee at Ford's Livonia, Michigan

plant passed away from COVID-19 after having worked in the plant as late as March 18, 2020.

*See* https://www.freep.com/story/money/cars/ford/2020/04/02/coronavirus-covid-19-ford-uaw-

worker-dies/5117272002/.

39.     Moreover, given the vast number of confirmed COVID-19 cases in the United

States, Mexico, Canada, China, Italy, and worldwide; the highly contagious nature of COVID-

19; the initial lack of available testing and the initial lack of laboratory capacity to quickly

process the tests that were administered; the fact that many of those afflicted with COVID-19 are

asymptomatic yet able to transmit COVID-19; the fact that COVID-19/SARS-CoV-2 spreads

easily from person to property to person *etc.*, especially where people are in close physical

contact and in enclosed spaces (as is the case in manufacturing plants); the vast numbers of

SARS-CoV-2 virions expelled into the air by an infected person by breathing, coughing and sneezing; the fact that SARS-CoV-2 virions may remain in the air and on physical surfaces for extended periods of time; and the fact that there are not commercially available methods to accurately test for SARS-CoV-2 virions in the air or on physical surfaces, it is a statistical certainty that SARS-CoV-2 virions have been physically present in the air and on the surfaces of the facilities of most, if not all, of Stant's customers' North American, Chinese, Italian, and other locations.

40.     The air inside the locations of Stant's affected customers was infused with tens or hundreds of thousands of SARS-CoV-2 virions, making it dangerous and potentially lethal to breathe.

## VII. GOVERNMENT RESPONSES

41.     In the winter and early spring of 2020, in response to SARS-CoV-2 and/or risks created by SARS-CoV-2, government officials in the United States and abroad issued orders suspending or severely curtailing the operations of non-essential businesses.

42.     These orders resulted from the need to address the spread of SARS-CoV-2 and transmission of COVID-19, including because of the known presence or statistically-certain presence of SARS-CoV-2 virions throughout the locales affected by the orders and the virtual certainty of transmission of these virions and therefore COVID-19 to people gathering in close proximity, including in plants and factories, and from person to property to person.

43.     At least some orders specifically state that they were being issued because SARS-CoV-2 virions cause and have caused damage to property.

44.     Given the virus' ubiquitous and inevitable presence and the fact that SARS-CoV-2 virions are necessarily present on the surfaces or in the air at locations, whether inside an

infected person who is present at a property or by an infected person's "shedding" of SARS-CoV-2 virions by the thousands, tens of thousands or hundreds of thousands into the air or onto surfaces at a property; and given that the ubiquitous presence of SARS-CoV-2 virions renders property unfit, unusable, or unsuitable for its intended purpose or unsafe for normal human occupancy and/or continued use, the government orders directly resulted from "physical damage" to property throughout the relevant locations impacted by the orders, including physical damage to the property of Stant's customers and/or third-party property near property of Stant customers.

45.     Government orders were issued, for example, in the following jurisdictions. The below orders are only examples and do not include all potential orders affecting locations of Stant customers.

46.     China mandated factory shutdowns across most of its provinces in January 2020. *See* https://www.forbes.com/sites/siminamistreanu/2020/02/23/chinas-factories-are-reeling-from-forced-coronavirus-closures/?sh=6cf632473f25.

47.     In addition, beginning in early March 2020, U.S. state and local governments issued orders suspending or severely curtailing the operations of non-essential businesses in various locations. Some orders expressly referenced physical property loss or damage from SARS-CoV-2.

48.     Italy similarly closed down all non-essential businesses in late March 2020. *See* https://www.reuters.com/article/us-health-coronavirus-italy-industry-ins/impossible-dilemma-world-watches-italy-as-businesses-plead-to-return-to-work-idUSKBN21P27C.

49.     Further, on March 31, 2020, Mexico's Secretary of Health issued a decree suspending non-essential business activities beginning on March 30, 2020.  *See* https://www.dof.gob.mx/nota_detalle.php?codigo=5590914&fecha=31/03/2020.

50.     Access to the work sites of many, if not all, of Stant's customers was limited or restricted as a result of the aforementioned orders and/or other civil authority orders.

51.     These limitations and/or restrictions prevented affected customers from operating their facilities, or operating them at full capacity, thereby causing "physical loss or damage" to the affected properties by depriving affected customers of the full use of and rights to the properties.

52.     Prior to the issuance of any of the orders curtailing or suspending non-essential business operations, hundreds of individuals would be present in the factories of Stant's customers on nearly a daily basis and working, in many instances, in close physical proximity to each other.

53.     Given the number of infected individuals, it is a statistical certainty that infected individuals, both symptomatic and asymptomatic, were present at many, if not all, of Stant's affected customer locations prior to the issuance of the governmental orders and would have been present in customer locations and surrounding property on an ever-increasing number in the absence of the issuance of those orders.

54.      Exhalation by these infected individuals when coughing, sneezing, talking, laughing, and even simply breathing created respiratory droplets and aerosolized particles containing SARS-CoV-2 virions that were inhaled into the noses, mouths, and lungs of other individuals and, to a lesser extent, deposited on the surfaces within the properties where later

contact by uninfected individuals undoubtedly resulted in transmission of COVID-19 to those individuals.

55.     Each presence of an individual, whether symptomatic or asymptomatic, infected with COVID-19 resulted in the release of thousands or tens of thousands of SARS-CoV-2 virions into the air and onto the surfaces within the customer location in which that individual was present.

## VIII.      THE ALL RISK POLICY

56.     Stant is protected by the All Risk Policy sold by FM to Vapor Parent, LLC, Stant's ultimate parent company, for the policy period May 1, 2019 to May 1, 2020, with policy no. 1053159.

57.     Stant USA Corp., Stant Foreign Holding Corp., and Vapor US Holding Corp. are Named Insureds under the All Risk Policy.

58.     All premiums due to FM to purchase the All Risk Policy were paid and all applicable conditions of coverage have been satisfied.

59.     The policy FM sold is an "all-risk" insurance policy.  An "all-risk" policy provides the broadest insurance coverage available to policyholders for protection of their property interests, including protection against disruption to their business operations.  Under an all-risk policy, the insured's burden to establish its right to coverage for a loss is very limited— the insured needs only to show that its loss occurred and that the loss was fortuitous. The burden then shifts to the insurance company to show that a clear, express, and unambiguous exception or exclusion in the policy bars or limits coverage.

60.     The losses incurred by Stant due to its customers' SARS-CoV-2-related suspensions of or reductions in operations are covered under the All Risk Policy sold by FM.

61.     The All Risk Policy covers Real Property and Personal Property and insures

"ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while

located as described in this Policy."

62.     The All Risk Policy also provides various "Supply Chain Time Element"

coverages and "Additional Time Element" coverages, including, *inter alia*, "Contingent Time

Element Extended," "Civil or Military Authority," and "Extended Period of Liability."

63.     The Contingent Time Element Extended coverage provides that:

> This Policy covers the Actual Loss Sustained and EXTRA EXPENSE
> incurred by the Insured during the PERIOD OF LIABILITY directly
> resulting from physical loss or damage of the type insured to property
> of the type insured at **contingent time element locations** located within
> the TERRITORY of this Policy.
>
> As respects CONTINGENT TIME ELEMENT EXTENDED:
>
> 1)     Time element loss recoverable under this Extension is extended
>        to include the following TIME ELEMENT COVERAGE
>        EXTENSIONS:
>
>        CIVIL OR MILITARY AUTHORITY
>        CONTINGENT TIME ELEMENT EXTENDED
>        DELAY IN STARTUP
>        EXTENDED PERIOD OF LIABILITY
>        INGRESS/EGRESS
>        OFF PREMISES DATA SERVICES TIME ELEMENT
>        ON PREMISES SERVICES
>        SERVICES INTERRUPTION TIME ELEMENT
>
>                                        ***

64.     "**Contingent time element location**" is defined in the All Risk Policy as, *inter*

*alia*, "A.  any **location**: 1) of a direct customer . . . to the Insured . . ." and "B.  any **location** of a

company that is a direct or indirect customer, supplier, contract manufacturer or contract service

provider to a **location** described in A1 above . . . ."

14

65.     The "TERRITORY" of the All Risk Policy is worldwide (with certain inapplicable enumerated exceptions that are not relevant to Stant's losses).

66.     The locations of Stant's customers qualify as "contingent time element locations" within the TERRITORY of the All Risk Policy.

67.     The All Risk Policy does not define the phrase "physical loss or damage of the type insured to property."

68.     The presence of the disjunctive "or" in "physical loss or damage" means that coverage is triggered if *either* a physical loss of property *or* damage to property occurs.

69.     Under its plain and ordinary meaning, or at the very least a reasonable interpretation thereof, "physical loss or damage" to property may occur when a covered cause of loss threatens or renders property unfit, unusable, or unsuitable for its intended purpose or unsafe for normal human occupancy and/or continued use.  This is supported by dictionary definitions of the words "physical", "loss," and "damage."

70.     For instance, Webster's Third New International Dictionary defines "physical" as "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary."  *Physical*, Webster's Third New International Dictionary (2020).

71.     Similarly, Black's Law Dictionary defines "physical" as: "Of, relating to, or involving material things; pertaining to real, tangible objects."  *Physical*, Black's Law Dictionary (11th ed. 2019).

72.     In addition, "loss" is defined by Merriam-Webster as "the act of losing possession," "the harm or privation resulting from loss or separation," or the "failure to gain, win, obtain, or utilize."  *Loss*, Merriam-Webster (Online ed. 2020).

73.     Similarly, Random House Unabridged Dictionary defines "loss" as "the state of being deprived of or of being without something that one has had." *Loss*, The <u>Random House Dictionary of the English Language</u> (1983).

74.     Further, "damage" is defined by Lexico as "Physical harm caused to something in such a way as to impair its value, usefulness, or normal function." *Damage*, Lexico, https://www.lexico.com/en/definition/damage.

75.     In a federal court filing in November 2019, FM judicially admitted that "physical loss or damage" exists under a property insurance policy where a physical substance rendered property "unfit for its intended use."  In making its argument, FM noted that "[n]umerous courts have concluded that loss of functionality or reliability under similar circumstances constitutes physical loss or damage."

76.     The known presence or statistically-certain presence of SARS-CoV-2 virions in or about insured "contingent time element locations," or the ubiquitous and inevitable presence of SARS-CoV-2 virions throughout the locales, states, and countries where "contingent time element locations" are situated,  constitutes "physical loss or damage" insured under the All Risk Policy.

77.     COVID-19 is spread through droplets containing SARS-CoV-2 virions, both of which are physical objects that attach to surfaces and remain in the air for prolonged periods of time.

78.     The known presence or statistically-certain presence of SARS-CoV-2 virions, or the ubiquitous and inevitable presence of SARS-CoV-2 virions, renders property unfit, unusable, or unsuitable for its intended purpose or unsafe for normal human occupancy and/or continued use.  For instance, the presence of tens or hundreds of thousands of SARS-CoV-2 virions in the

16

air and on the surfaces of a location makes entering that location hazardous and potentially lethal.

79.     Moreover, FM acknowledged in its September 11, 2020 letter to Stant that the presence of a **communicable disease**" is one type of "physical loss or damage" insured under the All Risk Policy, and that "COVID-19 meets the definition of a communicable disease under the [All Risk] policy."

80.     The express inclusion of coverage for "Interruption by Communicable Disease" under the All Risk Policy demonstrates that FM considers the presence of a communicable disease (and, by necessity, the underlying cause of that disease, such as a virus), to qualify as "physical loss or damage" or a "risk of physical loss or damage" under the All Risk Policy.  This holds true for purposes of all coverages of the All Risk Policy, including the Contingent Time Element Extended coverage grant.

81.     Similarly, under its plain and ordinary meaning, or at the very least a reasonable interpretation thereof, "physical loss or damage" to property may occur when a covered cause of loss renders property unsafe or otherwise unusable or results in a deprivation of the full use of and rights to property.  This is supported by the aforementioned definitions.

82.     Civil orders limiting or restricting access to insured "contingent time element locations" constitute "physical loss or damage" insured under the All Risk Policy as they rendered property unusable and resulted in a deprivation of the full use of and rights to affected property.

83.     Under the All Risk Policy, the Contingent Time Element Extended coverage is also expressly extended to include Civil or Military Authority.

84.      The Civil or Military Authority coverage provides as follows:

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured **location** provided such order is the direct result of physical damage of the type insured at the insured **location** or within five statute miles/eight kilometres of it

\*\*\*

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:

1)  starting at the time of such physical damage; but

2)  not to exceed the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section,

this period of time is part of and not in addition to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section.

85.    The Declarations of the All Risk Policy provide for a 45-consecutive day time limit for Civil or Military Authority.

86.    Under the All Risk Policy, the Contingent Time Element Extended coverage is also expressly extended to include Extended Period of Liability.

87.    The Extended Period of Liability coverage provides as follows:

The GROSS EARNINGS coverage is extended to cover the reduction in sales resulting from:

1)      the interruption of business as covered by GROSS EARNINGS;

2)      for such additional length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss happened; and

18

3)   commencing with the date on which the liability of the Company for loss resulting from interruption of business would terminate if this Extension had not been included in this Policy.

\*\*\*

Coverage under this Extension does not apply for more than the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.

88.    As modified by General Change Endorsement No. 001, the Limits of Liability clause of the Declarations section provides for a 365-day period for Extended Period of Liability.

89.    The All Risk Policy also provides coverage for "Claims Preparation Costs" as follows:

This Policy covers the actual costs incurred by the Insured:

1)   of reasonable fees payable to the Insured's accountants, architects, auditors, engineers, or other professionals; and

2)   the cost of using the Insured's employees,

for producing and certifying any particulars or details contained in the Insured's books or documents, or such other proofs, information or evidence required by the Company resulting from insured loss payable under this Policy for which the Company has accepted liability.

\*\*\*

90.    None of the exclusions in the All Risk Policy precludes or limits coverage for Stant's claim.

## IX.  **STANT SUFFERED COVERED LOSSES**

91.    Stant suffered significant financial loss due to its customers' COVID-19/SARS-CoV-2-related suspensions of or reductions in operations.

92.    Stant has estimated $5,334,000 in losses across its five plants.

19

93.     The known presence or statistically-certain presence of SARS-CoV-2 virions at Stant's customer locations, or the ubiquitous and inevitable presence of SARS-CoV-2 virions throughout the locales, states, and countries where Stant's customers are located, is a covered cause of loss, because it is a risk of physical loss or damage, and not otherwise excluded under the All Risk Policy.

94.     The issuance of the above-referenced orders of civil authorities affecting Stant's customer locations is also a covered cause of loss, because it is a risk of physical loss or damage, and not otherwise excluded under the All Risk Policy.

95.     The issuance of the above-referenced orders of civil authorities affecting Stant's customer locations is also a covered cause of loss, because the Contingent Time Element Extended coverage expressly includes Civil or Military Authority coverage, the orders resulted from "physical damage" (*i.e.*, the known presence, statistically-certain presence, and/or ubiquitous and inevitable presence of SARS-CoV-2 virions) at or within five statute miles/eight kilometres of Stant's affected customer locations, and the civil orders are not otherwise excluded under the All Risk Policy.

96.     Many, if not all, of Stant's affected customers are within five statute miles/eight kilometres of other businesses and properties that have also suffered physical damage due to SARS-CoV-2 virions and/or civil orders.  Nearby businesses and properties suffered alteration of their premises and contents as a result of the virtually certain and ubiquitous presence of SARS-CoV-2 virions due to gathering of people affected by COVID-19, whether symptomatic or asymptomatic.

97.     The above-referenced orders and/or other civil orders, issued as a direct result of the physical damage described above, operated to restrict many, if not all, of Stant's affected customers from accessing their properties and the immediate surrounding areas.

98.     The known presence or statistically-certain presence of SARS-CoV-2 virions at customer locations or the ubiquitous and inevitable presence of SARS-CoV-2 virions throughout the locales, states, and countries where Stant's customers are located, and/or the above-referenced civil orders or other civil orders directly impacted Stant's customer locations, resulting in a suspension of or reduction in their operations, and a significant financial loss for Stant.

## X.   FM'S DUTIES UNDER THE ALL RISK POLICY

99.     Stant timely notified FM of its claim for losses under the All Risk Policy.

100.    Stant has demanded that FM promptly adjust and pay Stant's losses.

101.    Stant has provided FM with documentation in support of its losses.

102.    Stant has requested that FM send "proof(s) of loss on your respective company form and indicate when you require it to be completed and we will endeavor to complete preliminary proof(s) of loss."

103.    Despite this request, FM has not yet provided Stant with proof of loss form(s) or advised Stant when it requires such proof of loss form(s) to be completed.

104.    As a result of the physical loss of and damage to property at the locations of Stant's customers and/or other contingent time element locations from the known presence or statistically-certain presence of SARS-CoV-2 virions at Stant's customer locations or the ubiquitous and inevitable presence of SARS-CoV-2 virions throughout the locales, states, and countries where Stant's customer locations are situated, and/or civil orders limiting or restricting

access to customer locations, FM is obligated by the All Risk Policy to pay for Stant's business interruption losses under the All Risk Policy, including under the Supply Chain Time Element Coverage for Contingent Time Element Extended, and including coverage for Extended Period of Liability.

105.    With respect to the ubiquitous presence of SARS-CoV-2 virions, such presence has been recognized by at least one state high court in considering conditions in Pennsylvania. In *Friends of Danny DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020), the Pennsylvania Supreme Court considered the governor's proclamation of a disaster emergency throughout the entire Commonwealth and found that, in light of the "nature of the virus and the manner in which it is transmitted," "any location . . .where two or more people can congregate is within the disaster area". *Id.* at 890.

106.    This ubiquitous presence of SARS-CoV-2 virions is or was true throughout much of the globe, including in all or part of the United States, the European Union, Mexico, and China.

107.    The aforementioned presence of SARS-CoV-2 virions and/or civil orders has caused physical loss or damage to Stant's customers' locations because the customer properties were rendered unusable for their intended purpose or unsafe for normal human occupancy or continued use, and affected customers were deprived of the full use of and rights to property.

108.    Stant's customers lost the functionality of those premises and their economic utility.  The suspension of or reduction in customer operations caused Stant to suffer significant financial losses.

109.    As there is no quick, accurate, or efficient method to test for the presence of SARS-CoV-2 in or on property, as many of those afflicted with COVID-19 are asymptomatic yet

able to transmit SARS-CoV-2, and as the employees at Stant's customer locations were so numerous, it is statistically certain that SARS-CoV-2 virions were in and on the customer locations and would have been present during continued normal operations, and in and on surrounding properties, and physical loss or damage must thus be presumed.

110.    Further, as a result of the aforementioned civil orders directly resulting from physical damage to property at or within five statute miles of Stant's customer locations, and limiting or restricting Stant's customers from accessing their properties, FM is obligated by the All Risk Policy to pay for Stant's business interruption losses under the All Risk Policy, including under the Supply Chain Time Element Coverage for Contingent Time Element Extended, and including coverage for Civil or Military Authority and Extended Period of Liability.

## XI.  FM'S IMPROPER COVERAGE POSITIONS REGARDING STANT'S CLAIM

111.    In its December 21, 2020 coverage position letter, FM concluded that with respect to "Policy provisions other than the Communicable Disease coverages" "the Policy excludes coverage for contamination."  "The presence of a virus, pathogen, or disease causing or illness causing agent such as COVID-19", FM stated, "is a form of contamination as defined in our Policy, which is excluded."

112.    In its December 21, 2020 coverage position letter, FM also asserted that other policy coverages, such as Civil or Military Authority, "do not apply absent physical loss or damage of the type insured."  And that "[t]he presence of COVID-19 at an insured location does not constitute 'physical damage of the type insured' as required under this provision." Accordingly, FM maintained, "the Policy's Civil or Military Authority provision (and other

Policy provisions requiring physical loss or damage of the type insured) do not respond based on the information presented."

113.    FM cannot meet its burden of proving the "contamination" exclusion applies to Stant's claim.

114.    Among other reasons, the express grant of communicable-disease related coverage in the All Risk Policy demonstrates that FM did not intend for the "contamination" exclusion to apply to viruses that cause communicable disease.

115.    Further, by its terms, the "contamination" exclusion applies only to "any cost" from contamination.  It does not use broader language addressing any loss or damage due to or resulting from contamination, such as the loss of income suffered by Stant.

116.    Moreover, FM has issued commentary on the exact language set forth in the All Risk Policy's "contamination" exclusion.

117.    In that commentary, FM stated that the exclusions in the section containing the "contamination" exclusion "pertain to types of damage that are excluded."  FM did <u>not</u> state that that exclusionary section pertains to types of "loss" that are excluded.

118.    In addition, FM stated only that the policy "excludes **contamination** . . . as well as any associated costs due to **contamination**, such as the cost of making property safe or suitable for use or occupancy."  FM did <u>not</u> state that the policy excludes business income loss due to or resulting from "contamination."

119.    Moreover, FM's position on "physical loss or damage" is improper and without merit for all of the reasons set forth in paragraphs 67-82 above.

120.    Stant has substantially performed or otherwise satisfied all conditions precedent to bringing this action and obtaining coverage pursuant to the All Risk Policy and applicable law,

or alternatively, Stant has been excused from performance by FM's acts, representations, conduct, or omissions.

## COUNT I

### (For Declaratory Relief Against FM)

121.    Stant incorporates by reference the allegations contained in paragraphs 1-120.

122.    As set forth above, the All Risk Policy protects Stant against the business interruption losses it suffered resulting from the known presence or statistically-certain presence of SARS-CoV-2 virions at Stant's customer locations, or the ubiquitous and inevitable presence of SARS-CoV-2 virions throughout the locales, states, and countries where Stant's customers are located, and/or the above-referenced civil orders or other civil orders affecting Stant's customer locations.

123.    FM has made clear that it will not honor its contractual obligations, as set forth in the All Risk Policy, and will refuse to provide full coverage for the business interruption losses suffered by Stant.

124.    An actual and justiciable controversy exists between Stant and FM regarding the interpretation, application, and meaning of the All Risk Policy.

125.    Accordingly, Stant is entitled to the declaratory judgment of this Court of its rights and of the obligations of FM under the All Risk Policy.

126.    Declaratory relief from this Court will resolve all outstanding issues of policy construction between Stant and FM under the All Risk Policy.

WHEREFORE, pursuant to 28 U.S.C. §§ 2201-02, Stant seeks judgment in its favor as follows:

a.    The entry of an Order declaring the known presence or statistically-certain presence of SARS-CoV-2 virions at Stant's customer locations or the ubiquitous and inevitable presence of SAR-CoV-2 virions throughout the locales, states, and countries where Stant's customers are located causes "physical loss or damage" to property sufficient to trigger coverage under the All Risk Policy for Stant's associated business interruption losses;

b.    The entry of an Order declaring the government orders described above  or other civil orders caused "physical loss or damage" to property, within the meaning of that phrase as used in the All Risk Policy, sufficient to trigger coverage under the All Risk Policy for Stant's associated business interruption losses;

c.    The entry of an Order declaring the government orders described above or other civil orders were issued as a direct result of "physical damage" at or within five statute miles/eight kilometres of affected Stant customer locations, namely the ubiquitous and inevitable presence of SARS-CoV-2 virions throughout the relevant locales, states, and countries, within the meaning of those phrases as used in the All Risk Policy, sufficient to trigger coverage under the All Risk Policy for Stant's associated business interruption losses;

d.    The entry of an Order declaring FM must pay Stant up to the limits of liability of the Contingent Time Element Extended coverage, including coverage for Civil or Military Authority and Extended Period of Liability,

as well as qualified Claims Preparation Costs for Stant's covered losses; and

e.    The award of such additional relief as the Court deems just and appropriate.


Dated: January 29, 2021          REED SMITH LLP


By: _____ s/Michael B. Galibois_____
Michael B. Galibois (S.D. Ind. Bar. No. 62722257IL)
REED SMITH LLP
10 South Wacker Drive 40th Floor
Chicago, IL 60606-7507
Telephone No.: 312.207.1000
Fax No.: 312.207.6400
mgalibois@reedsmith.com

*Attorneys for Plaintiffs Stant USA Corp.; Stant Foreign Holding Corp.; and Vapor US Holding Corp.*

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs demand a trial by jury as to all issues properly so tried.

Dated: January 29, 2021                              REED SMITH LLP


By: _____ s/Michael B. Galibois _____
Michael B. Galibois (S.D. Ind. Bar. No.
62722257IL)
REED SMITH LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606-7507
Telephone No.: 312.207.1000
Fax No.: 312.207.6400
mgalibois@reedsmith.com

*Attorneys for Plaintiffs Stant USA Corp.; Stant Foreign Holding Corp.; and Vapor US Holding Corp.*