UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STANT USA CORP., et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:21-cv-00253-SEB-TAB |
| ) | |
| FACTORY MUTUAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This cause is before the Court on Defendant's Motion to Dismiss filed on April 30, 2021, pursuant to Federal Rule of Civil Procedure 12(b)(6) [Dkt. 22] and Plaintiffs' Motion for Oral Argument on Defendant's Motion to Dismiss [Dkt. 37], filed on May 27, 2021. This action was initiated by Plaintiffs to recover under a commercial insurance policy issued by Defendant covering economic losses sustained by Plaintiffs' customers' suspensions of or reductions in operations resulting from the spread of the novel coronavirus ("COVID-19"). The parties' written submissions do not necessitate oral argument; accordingly, we <u>DENY</u> Plaintiffs' Motion for Oral Argument. For the reasons explicated below, we <u>GRANT</u> Defendant's Motion to Dismiss.

**Factual Background**

The following facts are deemed true, for purposes of our consideration of the motion to dismiss, having been drawn from the allegations in Plaintiffs' complaint, and

1

all inferences therefrom are also drawn in favor of Plaintiffs as the non-moving parties. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Plaintiffs Stant USA Corp., Stant Foreign Holding Corp., and Vapor US Holding Corp. (collectively, "Stant") manufacture, among other things, vapor management systems, fuel delivery systems, and thermal management systems, which are then sold to automobile manufacturers including Fiat Chrysler, Ford Motor Company, and General Motors as well as automotive suppliers including Plastic Osmium. Compl. ¶¶ 16–17, 19. Stant's manufacturing operations are located domestically in Indiana and Arkansas and internationally in Mexico, Czech Republic, and China. *Id.* ¶ 18. Stant's customers maintain locations throughout the United States as well as in Canada, Mexico, China, and Italy. *Id.* ¶ 20.

Beginning in 2020, the rapid spread of COVID-19 triggered a series of governmental orders in the United States and abroad suspending or severely curtailing the operations of non-essential businesses. *Id.* ¶ 41. Stant alleges scientific evidence shows that COVID-19 is highly transmissible, and that COVID-19 virions can survive and remain virulent for hours to days on surfaces made from a variety of materials, including stainless steel, plastic, wood, ceramics, etc. *Id.* ¶ 31. The aforementioned materials are incorporated into property located on the premises of Stant's customers. *Id.* ¶ 32. Because automobile manufacturing and supply plants operate in enclosed spaces involving large numbers of people working together in close proximity, Stant's customer locations are particularly susceptible to circumstances favorable to the spread of COVID-19. *Id.* ¶ 33.

Stant alleges that, based on the totality of known circumstances, "it is a statistical certainty that [COVID-19] virions have been physically present in the air and on the surfaces" of most, if not all, Stant's customers' properties. *Id.* ¶ 39. Some of Stant's customers' North American locations had workers who tested positive for COVID-19, and several of Stant's customers closed their North American facilities in response. *Id.* ¶¶ 35–37. Due to its **customers'** COVID-19-related suspensions of or reductions in operations, Stant alleges that it suffered an estimated $5,334,000.00 in derivative financial losses across its five plants. *Id.* ¶¶ 91–92 (emphasis added). Stant maintains that these losses are covered under the All Risk Policy ("Policy") issued to it by Factory Mutual Insurance Company ("FM"). *Id.* ¶ 60.

The Policy recites that it insures "Vapor Parent LLC" and its subsidiaries, which includes Stant USA Corp., Stant Foreign Holding Corp., and Vapor US Holding Corp. as Named Insureds. *Id.* ¶¶ 2, 57; Dkt. 1-1 at 2. After Stant's customers reduced or ceased their respective operations in response to the spread of COVID-19, Stant notified FM of its claim, demanding that FM cover Stant's business interruption losses under the Policy's Supply Chain Time Element Coverage for Contingent Time Element Extended provision, with coverage included under the Civil or Military Authority and Extended Period of Liability provisions. *Id.* ¶¶ 99–100, 110. On December 21, 2020, FM sent Stant a coverage position letter stating that the afore referenced Policy provisions do not provide coverage for Stant's alleged COVID-19 related business losses. *Id.* ¶¶ 111–12. Stant now seeks a declaratory judgment holding that it is entitled to payment based on a proper construction of the All Risk Policy. *Id.* ¶¶ 125–26.

3

## Legal Analysis

### I.        Standard of Review

Defendant has filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering whether a complaint embodies a claim upon which relief can be granted under Rule 12(b)(6), the Court accepts as true all well-pled factual allegations and draws all ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). Nevertheless, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2). While the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for an imperfect statement of the legal theory supporting the claim asserted," *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014), the claim asserted must still be "legally cognizable." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). If the factual allegations of the complaint, taken as true, do not support a legally cognizable claim for relief, the Court must grant a dismissal. *See id.*

### II.       Discussion

Federal jurisdiction in the case at bar is based on diversity of citizenship, the resolution of which, as the parties agree, invokes principles of Indiana law. Dkt. 23 at 8 n.8; Dkt. 36 at 4–5. Under Indiana law, the interpretation of the provisions of an insurance contract raises questions of law to be determined by a court. *Buckeye State Mut. Ins. Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009) (citing *Briles v. Wausau Ins. Co.*, 858 N.E.2d 208, 213 (Ind. Ct. App. 2006)). When interpreting an

insurance policy, the court must "ascertain and enforce the parties' intent as manifested in the insurance contract" *id.*, based on the policy as a whole in light of all the terms of the contract, not simply individual words, phrases, or paragraphs. *Briles*, 858 N.E.2d at 213. A court must also accept an interpretation of the contract language that harmonizes the various provisions, rather than embracing conflicting versions of those provisions. *Id.* In doing so, a court "should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669, 676 (Ind. Ct. App. 2007).

      The Policy has been attached in full as Exhibit A to Stant's complaint, allowing us to consider its terms in ruling on FM's motion to dismiss. *See Balkamp, Inc. v. Harbor Indus., Inc.*, No. 1:20-cv-1141, 2020 WL 4734795, at *4 (S.D. Ind. Aug. 14, 2020). The Policy includes a general coverage provision, which "covers property . . . against ALL RISKS OF *PHYSICAL LOSS OR DAMAGE*" to the covered property, "*except as hereinafter excluded*." Dkt. 1-1 at 2 (emphasis added).[1] The Policy, therefore, is an "all-risk" policy requiring that "an insured must prove that it suffered a covered loss before the burden shifts to the insurer to show an exclusion." *Ports of Ind. v. Lexington Ins. Co.*, No. 1:09-cv-0854, 2011 WL 5523419, at *9 (S.D. Ind. Nov. 14, 2011); *see also RAP Indy, LLC v. Zurich Am. Ins. Co.*, No. 1:19-cv-04657, 2021 WL 2416740, at *2 (S.D. Ind. June 14, 2021) (applying Indiana law and holding that the insured has the initial burden

---

[1] The Policy is attached as Exhibit A to the Complaint and is cited as Dkt. 1-1. All citations to specific pages in the Policy refer to the PDF page of the 94-page document, not to internal document page numbers.

5

of showing the existence of a loss under an "all-risk" policy before the burden shifts to the insurer). The Policy provides various "Supply Chain Time Element" coverages, pursuant to which Stant claims coverage. Compl. ¶ 62. These provisions provide as follows:

> **SUPPLY CHAIN TIME ELEMENT COVERAGE EXTENSIONS**
>
> **A. CIVIL OR MILITARY AUTHORITY**
>
> This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured location provided such order is the direct result of ***physical damage of the type insured at the insured*** location or within five statute miles/eight kilometers of it.
> . . .
>
> **B. CONTINGENT TIME ELEMENT EXTENDED**
>
> This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from ***physical loss or damage of the type insured to property of the type insured*** at contingent time element locations located within the TERRITORY of this Policy.
>
> As respects CONTINGENT TIME ELEMENT EXTENDED:
>
> 1) Time Element loss recoverable under this Extension is extended to include the following TIME ELEMENT COVERAGE EXTENSIONS:
>
> CIVIL OR MILITARY AUTHORITY
> CONTINGENT TIME ELEMENT EXTENDED
> . . .
> EXTENDED PERIOD OF LIABILITY
> . . .

Dkt. 1-1 at 59–60 (emphasis added).

6

Stant contends that the "Contingent Time Element Extended" and "Civil or Military Authority" provisions require FM to reimburse it for its losses. Compl. ¶ 62. Under the provisions cited, Stant must prove that it has suffered "physical loss or damage" before the burden shifts to FM to show that one or more of the Policy exclusions apply to bar coverage.

Stant thus seeks a declaration that the known presence or statistically certain presence of COVID-19 virions at its customer locations caused "physical loss or damage" to property sufficient to trigger coverage for Stant's resulting business interruption losses under the Supply Chain Time Element Coverage for Contingent Time Element Extended, with coverage included under the Civil or Military Authority and Extended Period of Liability provisions. *See, e.g.*, *id.* ¶¶ 6, 99–100, 110. In response, FM maintains that Stant's complaint fails to state a claim for declaratory relief because Stant has not suffered any "physical loss or damage," and, alternatively, that the Contamination Exclusion and the Loss of Use Exclusion both independently bar Stant's claims for its COVID-related losses. We discuss each cited provision and exclusion in turn below.[2]

---

[2] Stant's complaint also alleges that coverage should be included under the Extended Period of Liability provision. Compl. ¶ 62. Under the Policy, the insured has the option to make a claim based on 1) Gross Earnings and Extended Period of Liability or 2) Gross Profit. Dkt. 1-1 at 48. The Extended Period of Liability provision is included in the Policy as an Additional Time Element Coverage extension and is tied to the Gross Earnings provision, which details how to measure the Insured's claim for lost earnings. *See id.* at 48–49. The Extended Period of Liability simply extends the Gross Earnings provision to cover the reduction in sales resulting from the interruption of business to allow the Insured to bring a claim for losses of the type now alleged by Stant. *Id.* at 65. Stant thus brings its claim based on Gross Earnings and Extended Period of Liability, but the Extended Period of Liability provision does not warrant a separate analysis apart from our analysis of the Contingent Time Element Extended and Civil or Military Authority provisions; this provision simply serves as the mechanism through which Stant can bring its claim against FM.

### A. Supply Chain Time Element Coverage for Contingent Time Element Extended

FM maintains that there has never been any physical loss or damage to Stant or Stant's customers sufficient to trigger coverage under the Policy's Contingent Time Element Extended provision. Specifically, FM notes that Stant's complaint never once describes any physical damage inflicted upon its customers' properties and fails to assert "a single allegation of a single object which had to be repaired or replaced as a result of the presence of the coronavirus." Dkt. 23 at 11. Stant's general statements alleging derivative losses, FM asserts, preclude coverage and require dismissal of the complaint.

Stant does not dispute that coverage under this provision in the Policy requires "physical loss or damage" to property. Rather, Stant asserts that "physical loss or damage" to property may occur when a covered cause of loss threatens or renders property unfit, unusable, or unsuitable for its intended purpose or unsafe for normal human occupancy and/or continued use. Compl. ¶ 69. Stant maintains that it has plausibly alleged a claim for relief when this broader definition is employed because the presence of COVID-19 virions rendered its customers' properties unsafe and unfit for their intended use.

The Contingent Time Element Extended provision provides coverage for actual loss and extra expense incurred by Stant "directly resulting from physical loss or damage of the type insured to property of the type insured at contingent time element locations." Dkt. 1-1 at 59 (emphasis omitted). Stant's customers' locations qualify as contingent time

element locations under this provision.³ *See id.* at 79. The Policy does not define "physical loss or damage," [Compl. ¶ 67] but the absence of such a definition does not necessarily create an ambiguity. *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Est. of Harris by Harris*, 99 N.E.3d 625, 630 (Ind. 2018) ("[F]ailing to define a policy term merely means it has no exclusive special meaning, and the courts can interpret it."). Further, the existence of a disagreement among courts interpreting a specific insurance policy provision is not enough, by itself, to conclude that a particular clause is ambiguous. *See Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 248 (Ind. 2005) (holding insurance policy unambiguous despite disagreement between jurisdictions); *Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, No. 1:20-cv-02512, 2021 WL 3187521, at *5–6 (S.D. Ind. July 27, 2021). Instead, a phrase or provision is "ambiguous only if it is susceptible to more than one reasonable interpretation." *G&G Oil Co. of Indiana v. Cont'l W. Ins. Co.*, 165 N.E.3d 82, 87 (Ind. 2021) (citations and emphasis omitted). In other words, the issue of contractual ambiguity turns on whether "reasonably intelligent policyholders could . . . legitimately disagree as to what the [phrase] means." *Id.*

      Stant is not the first litigant to press the argument that the loss of the intended use of an insured property due to the presence of COVID-19 is sufficient to warrant coverage under a commercial insurance policy of this kind. However, after careful review and

---

³ Contingent time element location is defined under the Policy as "A. any location (1) of a direct customer, supplier, contract manufacturer or contract service provider to the Insured," as well as "(2) any location of a company that is a direct or indirect customer, supplier, contract manufacturer or contract service provider to a location described in A1." Dkt. 1-1 at 79.

9

consideration, we share Defendant's view that Stant has failed to state a plausible claim that its losses directly resulted from "physical loss or damage." Indeed, courts addressing this issue under Indiana law have been unanimous in their conclusion that economic losses prompted by or resulting from COVID-19 government shutdowns and restrictions do not constitute a direct "physical loss." *Circle Block Partners, LLC*, 2021 WL 3187521, at *4 (S.D. Ind. July 27, 2021) (finding that "'direct physical loss' to property requires a harmful alteration in the appearance, shape, color, composition, or other material dimension of the property"); *Georgetown Dental, LLC v. Cincinnati Ins. Co.*, No. 1:21-cv-00383, 2021 WL 1967180, at *7 (S.D. Ind. May 17, 2021) (holding that insurance policy's coverage requirement of "'physical loss' or 'physical damage' must be actual and demonstrable harm"); *Indiana Repertory Theatre v. Cincinnati Ins. Co.*, No. 49D01-2004-PL-013137, 2021 WL 5312179, at *11 (Ind. Super. Ct. Mar. 12, 2021) ("If loss of use alone qualified as direct physical loss to property, then the term 'physical' would have no meaning."); *MHG Hotels, LLC v. Emcasco Ins. Co., Inc.*, No. 1:20-cv-01620, 2021 WL 4472701, at *5 (S.D. Ind. Mar. 8, 2021) (interpreting policy's coverage of "direct physical loss" to mean "a loss that requires the insured to repair, rebuild, or replace property that has been tangibly, physically altered – not the insured's loss of use of that property"). We, ourselves, have previously reached this conclusion in a recent similar case, to wit, *Cafe Patachou at Clay Terrace, LLC v. Citizens Insurance Company*, No. 1:20-cv-01462, 2021 WL 6062958 (S.D. Ind. Dec. 22, 2021).

      We find persuasive the logic explicated in these opinions and further find that it applies to the facts presented here. Coverage under this provision is predicated upon a

showing of "physical loss or damage," which phrase unambiguously "requires a physical alteration to property." *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, No. 21-1186, 2021 WL 5833525, at *4 (7th Cir. Dec. 9, 2021). The Seventh Circuit has recently held that claims for business losses attributable to COVID-19 governmental executive orders imposing requirements on businesses to close or dramatically scale back their respective operations, unaccompanied by any demonstrable physical alteration to property, do not result in a "direct physical loss." *See Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, No. 21-1173, 2021 WL 5833486, at *1 (7th Cir. Dec. 9, 2021); *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, No. 21-1316, 2021 WL 5833485, at *1–2 (7th Cir. Dec. 9, 2021); *Sandy Point Dental, P.C.*, 2021 WL 5833525, at *4. Although these recent Seventh Circuit opinions applied Illinois law, we find no principled basis on which to hold that these findings and conclusions under Illinois law do not apply equally to insurance contracts in Indiana.[4]

Here, Stant claims that COVID-19 virions attach to surfaces and cause harm, loss, and damage, and physically alter property and/or the integrity of property, "although not in a way perceptible by the naked eye." Compl. ¶ 30. It maintains that it is "statistically certain" that the virions were present in one or more of Stant's customers' facilities during

---

[4] "Under Illinois law, an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose. If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning. Furthermore, [a] policy provision is not rendered ambiguous simply because the parties disagree as to its meaning. Rather, an ambiguity exists when the policy language is subject to more than one reasonable interpretation." *Sandy Point Dental, P.C.*, 2021 WL 5833525, at *3 (internal citations and quotation marks omitted).

the period of liability and that the air inside the properties was therefore infused with COVID-19 virions, making it dangerous and potentially lethal to breathe. *Id.* ¶¶ 34, 40. Although Stant's complaint devotes multiple paragraphs to a discussion of COVID-19's ability to travel through the air and to persist on (or even "alter") certain surfaces, there is not a single reference to any actual physical change or damage being inflicted upon any of its customers' properties nor any indication that any object had to be repaired or replaced as a result of the presence of COVID-19 virions. In lieu of such specific allegations, Stant requests that the Court "***presume***[]" physical loss or damage at customer locations and surrounding properties. *See id.* ¶ 109. Such a presumption falls short of Plaintiffs' obligation to muster enough facts to state a plausible claim for relief. *See Sandy Point Dental, P.C.*, 2021 WL 5833525, at *6 (finding that even if the virus was present *and* physically attached itself to the premises, there is no reason to think that the virus altered the physical structures because "its impact on physical property is inconsequential: deadly or not, it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days").

      Textual clues in the Policy reinforce our conclusion that "physical loss" requires an alteration to property beyond what Stant has referenced in its complaint. For each of the coverage provisions relied upon by Stant, the Policy specifies a "Period of Liability" which commences at the "time of physical loss or damage of the type insured." *See* dkt. 1-1 at 53–55. The Period of Liability ends "when with due diligence and dispatch the building and equipment could be: (i) ***repaired or replaced***; and (ii) made ready for operations, under the same or equivalent physical or operating conditions that existed

12

prior to the damage." *Id.* at 53–54 (emphasis added). The Policy's "Extended Period of Liability," in turn, simply extends the Period of Liability to allow for additional time to "restore the Insured's business to the condition that would have existed had no loss happened." *Id.* at 65. Thus, the Policy clearly links "physical loss or damage of the type insured" with the repair or replacement of that property. *See also MHG Hotels*, 2021 WL 4472701, at *5 (finding that plaintiff failed to plead a physical loss where there was no need to "repair, rebuild, or replace [the] property"). Stant has not alleged any need for repair or replacement of its own or its customers' property; thus, its allegations concerning the presence of COVID-19 virions at its customers' properties do not constitute "physical loss or damage."

The Policy provision under review here plainly references a loss to Stant's or Stant's customers' physical property; it does not include the Insureds' reduced use of the property in any particular fashion. A policy provision premised on "physical loss" provides coverage when a loss from a physical alteration to the insured property has occurred, rather than for a reduction in the usefulness of the property due to its inability or failure to function in accordance with its intended purpose. Thus, we hold that the ordinary meaning of the Policy's coverage requirement of "physical loss or damage" does not include coverage for business losses alleged to have occurred without any demonstrable physical alteration to the physical premises or the property located within.

### B. Civil or Military Authority

Stant also alleges that its losses are covered by the Civil or Military Authority Supply Chain Time Element Coverage extension which covers the actual loss sustained

13

and the extra expense incurred by Stant during the period of liability "if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured location provided such order is the direct result of physical damage of the type insured at the insured location or within five statute miles." Dkt. 1-1 at 59 (emphasis omitted). Stant maintains that it has alleged a plausible claim for relief under this Policy provision because the civil authority orders issued in response to COVID-19 and/or risks resulted in orders that restricted Stant's customers from accessing and using their properties to conduct their ordinary business activities. FM responds, and again we agree, that Stant's claim fails because the civil or military order must be "the direct result of ***physical damage of the type insured***," which requires a showing of "physical loss or damage" to trigger coverage. *See Nguyen v. Travelers Casualty Ins. Co.*, 541 F.Supp.3d 1200, 1221 (W.D. Wash. 2021) ("[W]here the Civil Authority provision is premised on an initial trigger of coverage, there are no independent grounds to find coverage as the Court has found no trigger because COVID-19 does not cause direct physical loss of or damage to insured property."); *T & E Chicago LLC v. Cincinnati Ins. Co.*, 501 F. Supp. 3d 647, 651–52 (N.D. Ill. 2020) (holding that insurance policy's civil authority provision did not apply because plaintiff's COVID-related business income losses do not constitute physical loss). We therefore hold that this provision does not provide a basis for the relief Plaintiffs seek because no physical damage of the required type has been alleged to have occurred.

## C. Exclusions

FM maintains that, even if the Court were to find that Stant successfully established a physical loss of property entitling it to coverage under the Policy, the complaint still must be dismissed because both the "Contamination Exclusion"[5] and the "Loss of Use Exclusion"[6] apply to bar Stant's claims. Given our conclusion (consistent with the Seventh Circuit's holdings) that the Policy provisions relied upon by Stant do not provide coverage for its business losses, we need go no further to discuss the applicability of these exclusions, since they would be triggered only when a sufficient claim of physical loss has been established. *See, e.g.*, *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 694 n.3 (N.D. Ill. 2020), *aff'd sub nom. Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, No. 21-1186, 2021 WL 5833525, at *1 (7th Cir. Dec. 9, 2021); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 406–07 (6th Cir. 2021) (declining to resolve the parties' arguments concerning the policy's virus and ordinance and law exclusions because "the absence of initial coverage for this claim suffices to reject it"). Nevertheless, because the parties have discussed the Policy's Communicable Disease Response coverage in the context of the Contamination

---

[5] The Contamination Exclusion bars coverage for "contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If contamination due only to the actual not suspected presence of contaminant(s) directly results from other physical damage not excluded by this Policy, then only physical damage caused by such contamination may be insured." Dkt. 1-1 at 23 (emphasis omitted). Contamination is defined as "any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew." *Id.* at 79.

[6] The Policy excludes "loss of market or loss of use." Dkt. 1-1 at 19.

Exclusion, which coverage does not include a physical loss or damage trigger, we shall address these issues.

Stant contends that the Contamination Exclusion does not apply to bar its claims, arguing that since the Policy provides Communicable Disease coverage in certain instances, it would be inconsistent for the Policy to be read to exclude all physical loss or damage caused by all viruses, pathogens, and disease-causing agents. This argument is not entirely clear in Stant's brief, but it seemingly is proffered as support for Stant's argument that coverage for communicable disease in the Policy's additional coverage section reflects FM's acknowledgement that COVID-19 causes physical loss or damage. *See* Compl. ¶¶ 79–81; Dkt. 23 at 7 n.7; Dkt. 36 at 21; Dkt. 44 at 2. In response, FM explains that the Communicable Disease and Contamination Exclusion provisions are complementary not contradictory; properly understood, the exclusion <u>bars</u> recovery for loss and damage caused by the actual or suspected presence of contaminants, including viruses like COVID-19, <u>unless</u> a claimant can satisfy the Communicable Disease provision's prerequisites.

The Policy's Communicable Disease provision states that coverage applies when a "***location owned, leased or rented by the Insured*** has the actual not suspected presence of communicable disease and access to such location is limited, restricted or prohibited" by either "1) an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease" or "2) a decision of an Officer of the Insured as a result of the actual not suspected presence of communicable disease." Dkt. 1-1 at 66 (emphasis added). Unlike the Time Element provisions, the Communicable

Disease provision does not contain a "physical loss" trigger and does not extend coverage to contingent time element locations, to wit, Stant's customers' properties. *See id.* at 13–14.

Clearly, the Communicable Disease Response provision covers losses arising from a communicable disease outbreak at the insured premises—not losses from an outbreak affecting the public at large or entities comprising Plaintiffs' supply chain for its products. Here, the Policy insures Stant's properties, but Stant has not alleged that COVID-19 was actually present in or on its insured premises, or that anyone on its premises was actually infected with COVID-19. Instead, Stant simply asserts that COVID-19 was present at its customers' properties and that as a result it suffered derivative losses. Thus, even construing these allegations in the light most favorable to Stant, they fall short of stating a plausible claim that the Communicable Disease provision applies in any way to the losses alleged in the complaint. *See Nguyen*, 541 F.Supp.3d at 1228 (finding no coverage under FM's Communicable Disease Provisions because plaintiff "did not plead that the COVID-19 virus was found at any of its locations, a requirement for coverage under this extension"). In addition, the Communicable Disease coverage applies only when the disease is present, distinguishing it from the Time Element provisions, which require physical loss or damage. That the Communicable Disease provision may be applicable in circumstances when the disease is present at an insured premises, such coverage "does not reverse-activate" the Time Element provisions, as Stant maintains. *See id.* at 1227.

The Communicable Disease provision is inapplicable to the claims raised by Stant. Thus, the parties' additional arguments regarding the Policy's exclusions are irrelevant to

17

a resolution of FM's motion to dismiss. As previously explained, Stant is unable to establish coverage under the Policy provisions it cites in support of its claim for business income losses because the complaint fails to allege/establish "physical loss or damage" sufficient to trigger coverage. Applying Indiana law, we hold that the burden has not shifted to FM to establish that an exclusion applies that would bar coverage for Stant's losses. Accordingly, the complaint must be dismissed for failure to state a claim upon which relief can be granted.

### III.     Conclusion

For the reasons outlined above, Defendant's Motion to Dismiss [Dkt. 22] is GRANTED and Plaintiffs' complaint is DISMISSED WITH PREJUDICE.[7] Plaintiffs' Motion for Oral Argument [Dkt. 37] is also DENIED.

IT IS SO ORDERED.

Date:     2/3/2022

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[7] "When a complaint fails to state a claim, the plaintiff ordinarily should receive at least one opportunity to amend it, unless an amendment would be futile." *Olrich v. Kenosha Cty.*, 825 F. App'x 397, 400 (7th Cir. 2020) (citing *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015)). The clear and unambiguous language of the policy provisions cited by Stant demonstrates that Stant is not entitled to coverage based on the allegations in its complaint. Thus, an amendment would be futile in this instance.

Distribution:

Sarah J. Bily
WINSTON & STRAWN LLP
sbily@winston.com

John N. Ellison
REED SMITH LLP
jellison@reedsmith.com

Michael B. Galibois
REED SMITH LLP (Chicago)
mgalibois@reedsmith.com

Miranda Amber Jannuzzi
REED SMITH LLP
mjannuzzi@reedsmith.com

Harvey Kurzweil
WINSTON & STRAWN LLP
hkurzweil@winston.com

Richard Phelps Lewis
REED SMITH LLP
rlewis@reedsmith.com

Kelly A. Librera
WINSTON & STRAWN LLP
klibrera@winston.com

George Mastoris
WINSTON & STRAWN LLP
gmastoris@winston.com

Kathy Lynn Osborn
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
kathy.osborn@faegredrinker.com

Jason Rauch
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
jason.rauch@faegredrinker.com

Maureen L. Rurka

WINSTON & STRAWN LLP
mrurka@winston.com